UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCHRADER CELLARS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT M. ROACH,<br><br>    Defendant. | Case No. 21-cv-01431-SK<br><br>**ORDER REGARDING POST-TRIAL MOTIONS**<br><br>Regarding Docket Nos. 302, 303, 304, 310 |

Now before the Court are the following four post-trial motions: (1) the renewed motion by Defendant Robert M. Roach ("Roach") for judgment as a matter of law (Dkt. No. 302); (2) Roach's motion to dismiss for lack of jurisdiction (Dkt. No. 303); (3) Roach's motion to alter judgment (Dkt. No. 304); and (4) the motion by Plaintiff Schrader Cellars, LLC, for new trial and renewed motion for judgment as a matter of law.[1] Having carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court hereby DENIES all four motions for the reasons set forth below.

## BACKGROUND

The Court has written extensively about the factual background of this matter in ruling before trial on the motions for partial summary judgment and adjudication. (Dkt. No. 168.) In summary, this dispute arose out of a friendship between Fred Schrader and Robert M. ("Randy") Roach and a conflict over ownership rights to part of a winery, Schrader Cellars.[2] Before conflict arose in 2018, Roach and Fred were close friends for over two decades. (Dkt. No. 168.) Roach

---

[1] The Court will address Plaintiffs' motion for attorneys' fees and non-taxable costs (Dkt. No. 299) in a separate order.

[2] Because there are two individuals in the case with the last name "Schrader," the Court refers to them by their first names: Fred and Carol. All references to Schrader Cellars will be to "Cellars," also to avoid confusion.

1    provided funding to start an entity called "Roach Brown Schrader" ("RBS"), and the crux of this

2    dispute arose over the formation and status of RBS and its relationship with Cellars.  (Dkt. No.

3    168.)  Between 1997 and 2016, Roach provided legal services to Fred, Cellars, and/or RBS.  (Dkt.

4    No. 168.)  Fred and Roach disagreed about whether the funding Roach provided was a loan or an

5    investment, and there was no specific writing to outline the terms of that funding.  (Dkt. No. 168.)

6    Roach asserts that, as part of the agreement, he provided legal services to Cellars.  (Dkt. No. 168.)

7    Cellars agrees that Roach provided legal services and that it paid him for those services in the

8    form of cases of very expensive wine.  The two competing versions of the alleged agreement are

9    as follows:  (1) Roach claims that he provided funds and his legal services as an investment for

10   RBS, an entity separate from Cellars; and (2) Cellars claims that Roach provided funds as a loan,

11   which Cellars repaid in full, and that Roach separately provided legal services for which Cellars

12   paid in cases of expensive wine.

13          In 2017, Franciscan Vineyards, then a subsidiary to Constellation Brands, Inc.

14   ("Constellation") acquired Cellars, and Constellation became the parent company of Cellars.

15   (Dkt. No. 168.)  Roach learned of the sale of Cellars and then filed suit in Texas state court against

16   only Fred initially and later also against Constellation.  (Dkt. No. 168.)  In the Texas litigation,

17   Roach claimed that he had an ownership interest in RBS that had been comingled into the assets of

18   Cellars and thus that Constellation had wrongfully obtained Roach's property.  (Dkt. No. 168.)

19   Cellars was never a party to the Texas litigation.  (Dkt. No. 168.)

20          On February 26, 2021, Cellars originally filed this suit for declaratory relief, false

21   advertising, trademark infringement, trademark dilution, trade libel/defamation, unjust enrichment,

22   breach of fiduciary duty, and violation of California Business and Professions Code section 17200,

23   *et seq*.  (Dkt. No. 1.)  Cellars sought a judicial declaration that:

24   
>    a. There were no liens or encumbrances on any of Schrader
25   
>       Cellars, LLC's physical assets or intellectual property when
>       Schrader Cellars, LLC became a wholly-owned subsidiary of
26   
>       Franciscan Vineyards (n/k/a) TPWC, Inc.;
>    b. All right, title, and interest to the claimed assets are the sole
27   
>       property of Plaintiff Schrader Cellars, LLC, including all
>       physical assets, inventory, and intellectual property associated
28   
>       with Schrader Cellars and the SCHRADER marks;

United States District Court
Northern District of California

      c. Roach has no rights or title to Plaintiff's assets;
      d. Roach has no registered or common law rights to any SCHRADER mark, including the Schrader RBS mark; and
      e. Roach has zero percent membership interest in Schrader Cellars, LLC.

(Dkt. No. 1.) Cellars also explained its theory of breach of fiduciary duty against Roach. (*Id*., ¶¶ 134-138.) Cellars alleged that, because it had retained Roach as an attorney, there was a confidential relationship between them, and Roach owed Cellars a fiduciary duty even after the attorney-client relationship was terminated in July 2016. (*Id*., ¶ 135.) Cellars alleged that "Roach abused the trust and confidence of" Cellars "by attempting to acquire an ownership, possessory, and/or pecuniary interest in" Cellars, without notifying Cellars "of his intent to do so, giving Plaintiff the opportunity to seek the advice of independent counsel, or obtaining Plaintiff's written consent." (*Id*., ¶ 136.) Cellars filed an amended Complaint, and the allegations of the amended Complaint regarding breach of fiduciary duty were identical to the allegations in the original Complaint. (Dkt. No. 32 (First Amend. Compl. ("FAC")), ¶¶ 94-99.)

      Roach filed an Answer and Counterclaim. (Dkt. No. 28.) Roach alleged claims for (1) cancellation of the trademark "RBS" due to fraud on the United States Patent and Trademark Office ("U.S. PTO"), (2) cancellation of other trademarks, (3) declaratory judgment that Cellars currently holds RBS assets in trust for Roach because Cellars took over the assets of RBS in a wrongful manner, (4) declaratory judgment that Cellars is equitably estopped from denying Roach's ownership interest in the RBS assets because its actions caused Roach to believe that Cellars recognized his ownership; (5) declaratory judgment that Cellars is equitably estopped from denying Roach's equitable ownership in Cellars; and (6) equitable accounting. (*Id*.) The theory behind the first two claims for cancellation of the trademarks is that Cellars obtained those trademarks by fraudulent representations to the U.S. PTO because Cellars knowingly and fraudulently declared under oath in their trademark applications that Cellars was the owner of the trademarks, that it was entitled to exclusive use, and that no other person or entity had the right to use the trademarks in commerce. (*Id*., ¶¶ 24, 28.) Roach alleged that he had an equitable ownership of the trademarks because Cellars fraudulently diverted the funds that he invested in RBS. (*Id*., ¶¶ 35, 37.)

1          After the Court ruled on motions to dismiss (Dkt. Nos. 27, 46), the sole remaining claims
2   before summary judgment were the claims for competing claims for declaratory relief, unjust
3   enrichment, breach of fiduciary duty, and claims for trademark infringement under federal and
4   common law by Cellars against Roach.  However, in its opposition to Roach's motion for
5   summary adjudication, Cellars voluntarily dismissed its claims for federal and common law
6   trademark infringement.  (Dkt. No. 137 at page 28.)
7          In ruling on the motions for partial summary judgment and summary adjudication, the
8   Court held that Roach provided legal services to Fred, Cellars, and RBS in California; that
9   California Rule of Professional Responsibility 1-100 applied to his actions; and that Roach was
10  required to adhere to California Rule of Professional Responsibility 3-300 ("Rule 3-300").  (Dkt.
11  No. 168.)  The Court held that, because Roach did not have a written agreement regarding his
12  business relationship with his clients, which was a violation of Rule 3-300, and Roach failed to
13  rebut the presumption that the transaction was the product of undue influence, Roach could not
14  enforce the alleged business agreement with his clients in which he allegedly obtained an
15  ownership interest in RBS.  (Dkt. No. 168.)  The Court also found that the statute of limitations
16  did not bar as a matter of law the claim for breach of fiduciary duty, Roach's defense of unclean
17  hands, or Cellars' claim for declaratory relief.  (Dkt. No. 168.)
18         The Court granted Roach's motion for leave to file a motion for reconsideration and then
19  denied the motion for reconsideration.  (Dkt. Nos. 171, 184.)  Because Roach asserted that he
20  never used the disputed trademarks in commerce and because the Court had ruled that he had no
21  equitable interest in the trademarks, Cellars stated that it no longer asserted any claims for
22  trademark relief and withdrew them.  (Dkt. Nos. 178.)  The Court then granted summary judgment
23  as to Roach's counterclaims for cancellation of trademarks, since Cellars no longer asserted claims
24  against Roach.  (Dkt. No. 187.)
25         The case then proceeded to jury trial on the sole issue for the jury:  Cellars' claim for
26  breach of fiduciary duty against Roach.  Cellars' theory was that Roach breached his fiduciary
27  duty to Cellars, his client, in entering into an invalid agreement to gain an ownership interest and
28  in attempting to seize ownership of Cellars.  Cellars claimed that it was forced to bring this suit to

1  "clear title": to obtain a declaration that Roach has no ownership interest in Cellars. Cellars
2  claimed as damages the attorneys' fees it was forced to incur in this litigation and also sought as
3  disgorgement the value of the wine it paid to Roach for his legal services.
4    The Court instructed the jury as a matter of law that Roach had breached his fiduciary
5  duties to Cellars. (Dkt. No. 265.) The jury then found that Roach's breach of fiduciary duty was a
6  substantial factor in causing Cellars harm, that Cellars could not have known, with reasonable
7  diligence, of Roach's wrongful acts, before September 2, 2019; that Cellars did not sustain actual
8  injury from the breach of fiduciary duty before September 2, 2019, and that the gravamen of the
9  claim for breach of fiduciary duty was based on the filing of Roach's Texas litigation (the
10 "litigation privilege defense"). (Dkt. No. 286.) Thus, because the jury found for Roach on the
11 litigation privilege defense, the jury did not award damages to Cellars. (Dkt. No. 286.) Also,
12 because the jury found that the litigation privilege barred Cellars' claim, the Court did not rule
13 separately on Cellars' claim for unjust enrichment, which was based on the same facts. The Court
14 then entered judgment. (Dkt. No. 288.)

## ANALYSIS

### A. Motion by Cellars for New Trial.

  Cellars moves for a new trial and renews its motion for judgment as a matter of law ("JMOL"). Cellars' motions hinge on three main arguments: (1) the affirmative defense of the *Noerr-Pennington* doctrine[3] and litigation privilege under California law, (2) the Court's judicial notice of documents, and (3) applicability of affirmative defense to the equitable claim for unjust enrichment. As noted above, Cellars did not prevail on its claim for breach of fiduciary duty because the jury found that the gravamen of the claim for breach of fiduciary duty was based on the filing of Roach's Texas litigation. The Court DENIES these motions. The law supports an instruction to the jury on the defense, and there was sufficient evidence on both sides to submit this issue to the jury for resolution. The Court did not err in taking judicial notice of pleadings and

---

[3] This doctrine is based on two seminal cases: *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961).

did not err in finding that the jury's findings precluded Cellars' claim for unjust enrichment.

### 1. Standard for Motion for Judgment as a Matter of Law.

A motion for judgment as a matter of law ("JMOL") is appropriate where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on that issue. Federal Rule of Civil Procedure 50(a)(1). A court can grant a JMOL "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915 918 (9th Cir. 2002). A court must uphold a jury's verdict "it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Escriba v. Foster Poultry Farms, Inc.*, 743 F. 3d 1236, 1242 (9th Cir. 2014). A court must review the evidence as a whole and "disregard evidence favorable to the moving party that the jury is not required to believe," and the court "may not substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (internal quotations omitted).

### 2. Standard for Motion for New Trial.

For a motion for new trial, the Ninth Circuit has explained, "even if substantial evidence supports the jury's verdict, a trial court may grant a new trial if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 819 (9th Cir. 2001) (citing *4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)).

### 3. Affirmative Defense of *Noerr-Pennington* Doctrine and Litigation Privilege Under California Law.

Cellars argues that there were several errors all related to the affirmative defense of the *Noerr-Pennington* doctrine and litigation privilege under California law. "The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I). The *Noerr-Pennington* doctrine provides that litigants who

"petition the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929 (citations omitted). There is an exception to the *Noerr-Pennington* doctrine, the "sham" litigation exception, *Sosa*, 437 F.3d at 932, which arises when the *Noerr-Pennington* defense is applied to antitrust claims. The *Noerr-Pennington* doctrine applies to the filing of a petition and also to "conduct incidental to the prosecution of the suit." *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc*., 944 F.2d 1525, 1528 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). The *Noerr-Pennington* doctrine applies to state law tort claims. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). In contrast to the California litigation privilege, the *Noerr-Pennington* doctrine does not provide immunity from suit but is an affirmative defense to liability. *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.,* 711 F.3d 1136, 1140 (9th Cir. 2013).

The litigation privilege under California law is similar but not identical to the *Noerr-Pennington* doctrine. A "publication or broadcast" made as part of the "judicial proceeding" is privileged. Cal. Civ. Code § 47(b). The litigation privilege applies to all cases except claims for malicious prosecution, *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990), *as modified* (Mar. 12, 1990) (internal citation omitted), and claims for attorney malpractice. *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 600 (9th Cir. 2010). The litigation privilege is given a "broad interpretation" and "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Action Apartment Assn. Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (internal quotation and citation omitted). The litigation privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Silberg*, 50 Cal. 3d at 212.

### i. Assertion of Affirmative Defense and Jury Instructions.

Cellars argues that Roach first asserted this defense of the *Noerr-Pennington* doctrine and litigation privilege a month before trial. However, Roach clearly listed this defense in his Answer. (Dkt. Nos. 28, 54.) In Roach's Answer to the First Amended Complaint, he stated:

7

> Privilege. Roach is not liable to Schrader Cellars because the alleged statements attributed to Roach were privileged and Roach acted without actual malice. Roach has an absolute privilege to make statements in judicial proceedings, judicial-like proceedings, or in other contexts having some relation to judicial proceedings or judicial-like proceedings. Roach has a qualified privilege to describe the fraud that Schrader Cellars, acting through Fred Schrader, and that its prior and current owners perpetuated on both Roach and on the California Secretary of State. Roach's actions were also privileged under the *Noerr-Pennington* doctrine, which, among other things, exempts Roach from any and all liability for bringing a lawsuit and petitioning a court for redress.

(Dkt. No. 54.) Although it is accurate that Roach did not initially provide a jury instruction for this defense, the Court noted on February 23, 2023, that Roach had failed to provide jury instructions for certain affirmative defenses in the Answer and provided Roach an opportunity to submit a jury instruction for any defense in the Answer. (Dkt. Nos. 228, 243.) Roach then did so. (Dkt. No. 231.)

Roach proposed the following jury instruction: "One who files a lawsuit in a court of law is immune from liability for having done so." (Dkt. No. 231.) Cellars objected and argued that no instruction should be given at all but not provide any alternate jury instruction. (Dkt. No. 241.) The Court gave the following instruction on both the litigation privilege and *Noerr-Pennington* doctrine as follows, under the title of "Privilege":

> A person who files a lawsuit is immune from liability simply for filing the lawsuit. However, a person is not immune from liability from other actions. You must decide if the gravamen – or heart – of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit.

(Dkt. No. 265.) In the verdict form, the jury answered "yes" to the question: "Do you find that the gravamen – or heart – of the claim that Cellars brings for breach of fiduciary duty against Roach is based on his filing of the Texas lawsuit?" (Dkt. No. 261.)

### ii. Applicability of Privilege Defense to Claim.

Cellars argues that the application of the litigation privilege and *Noerr-Pennington* doctrine as a defense was improper under the circumstances because that defense is not applicable in a case in which a client sues a former lawyer for breach of fiduciary duty. Although there is

8

case law indicating that the litigation privilege under California law does not apply to malpractice actions against an attorney, there is no case law indicating that actions for breach of fiduciary duty are barred. And here, the rationale for excluding the defense for malpractice actions does not apply. In a malpractice action, the dispute – if based on actions the former attorney took in litigation – centers on the actions the former lawyer took in the judicial process itself on behalf of its client. For that reason, applying the litigation privilege does not make sense. Here, in contrast, the crux of this dispute was not Roach's action in representing Cellars; instead, the crux of this claim for breach of fiduciary duty was Roach's attempt to gain ownership of Cellars. The jury found that the claim arose out of his attempts in the Texas litigation to gain ownership of Cellars.

Furthermore, there is no case law indicating that the *Noerr-Pennington* doctrine exempts claims for breach of fiduciary duty in this context, and for the same reason that the exception for litigation privilege does not apply, any exception would not apply to the *Noerr-Pennington* doctrine.

### iii. Sufficiency of Evidence.

Next, Cellars argues that it was error to instruct the jury and error to include Question Number 4 on the verdict because there was no evidence that Cellars' claim was based on Roach's filing and maintenance of the Texas litigation. Cellars' theory of breach of fiduciary duty was that Roach breached when he violated Rule 3-300 by entering into a business relationship with a client without a writing and without advising the client fully of the deal. Cellars claimed that it was only harmed when Roach asserted his ownership rights over Cellars and forced Cellars to bring this claim for breach of fiduciary duty and incur legal fees in doing so.

Despite Cellars' theory, there was evidence to support the finding by the jury that the underlying basis of the breach of fiduciary duty claim was Roach's action in filing and prosecuting the Texas litigation. Even Cellars' own pleadings support a theory that Cellars' claim for breach of fiduciary duty was based on Roach's filing of the Texas litigation. Cellars first described the Texas litigation and then alleged in the section labeled "Breach of Fiduciary Duty":

> Despite having voluntarily accepted the trust and confidence of
> Plaintiff with regard to its legal and business matters, and in

9

> violation of this relationship of trust and confidence, Roach abused the trust and confidence of Plaintiff by attempting to acquire an ownership, possessory, and/or pecuniary interest in Schrader Cellars, LLC by without notifying Plaintiff of his intent to do so, giving Plaintiff the opportunity to seek the advice of independent counsel, or obtaining Plaintiff's written consent.

(Trial Exhibit 617 (FAC) at ¶¶ 13, 97).) The way in which Roach attempted to gain a pecuniary interest was by filing and prosecuting the Texas litigation. Thus, it was appropriate to present competing versions of the facts to the jury.

### iv. Litigation Privilege as a Matter of Law.

Cellars argues that the Court was required to decided litigation privilege as a matter of law. However, the Court was not required to decide the issue of litigation privilege under California law because the facts were in dispute. Cellars claimed that it filed its claim for breach of fiduciary duty against Roach because of his public comments about being an owner of Cellars. Those comments explain why Cellars filed a claim to "quiet title" in this action, but they are not directed specifically at the claim for breach of fiduciary duty. That claim was based Roach's attempt to gain ownership of Cellars, and the issue for the jury was whether the claim for breach of fiduciary duty was based on Roach's actions in the Texas litigation or simply his public assertion, outside of the Texas litigation, that he had an ownership stake in Cellars.

### v. Failure to Instruct on Sham Litigation Exception.

Cellars argues that the Court erred in failing to give an instruction on the sole exception the *Noerr-Pennington* defense – sham litigation, but Cellars never asked for or proffered one. Also, given that the sham litigation exception applies in the context of antitrust litigation, under a rationale that does not apply here, there was no reason to provide that instruction.

### vi. Wording of Jury Instruction.

Cellars argues that the Court's instruction was improper because it was based on California's anti-SLAPP action. Yet Cellars provided, and still provides, no alternative. The jury instruction provided and question on the verdict form reflects the law as described above.

### 4. Court's Taking of Judicial Notice.

Cellars claims that the Court erred in taking judicial notice of three trial exhibits, 601, 617,

10

and 648.  Trial Exhibit 601 was the First Amended Petition that Roach filed in the Texas litigation.  The Court found that Trial Exhibit 601 was admissible.  (Dkt. No. 238).  This exhibit, along with other pleadings in the Texas litigation, were discussed as part of the statute of limitations issue – as to when Cellars was placed on notice that Roach was claiming an ownership interest in Cellars.  Cellars initially questioned Roach about it.  (Tr. at 282:11-283:25.)  Cellars actually asked to enter into evidence Trial Exhibit 77, a pleading from the Texas litigation, to prove its point, and the Court admitted it without objection.  (*Id.*)

Roach was then questioned by his own counsel about Trial Exhibits 601 and 648, about some of the same issues.  (Tr. at 337:24-338:20.)  Cellars objected to Roach's testimony about what the court ruled in the Texas litigation, and the Court sustained the objection but took judicial notice of Trial Exhibit 648 – an order in the Texas litigation.

The Court also took judicial notice of Trial Exhibit 617, the First Amended Complaint that Cellars filed in this action.

The Court took judicial notice of all three exhibits but instructed the jury as follows:

> And the Court has decided to accept as proved the fact that on April 22nd, 2019, Roach filed the document labeled Exhibit 601.  You must accept this fact as true.  You need not accept the facts contained in the petition as true but merely the fact that Roach made these allegations on that date.  The Court has also decided to accept as true – as proved the fact that on February 26th, 2021, Schrader Cellars filed the complaint in this action labeled Exhibit 617.  You must accept this fact as true.  You need not accept the facts contained in the complaint as true but merely that Cellars made the allegations on that date.  The Court has decided to accept as proved the fact that on November 24th, 2020, the Texas Court issued an order in the form of Exhibit 648.  You must accept as true the Court – that the Court issued this order.

(Tr. 502: 25-503:14.)

The Court properly took judicial notice of pleadings both in this litigation and in the Texas litigation to show what the parties asserted in this action and in the Texas litigation and when Cellars was placed on notice of Roach's claims.

**5.  Unjust Enrichment.**

Cellars argues that the jury's finding that its claim for breach of fiduciary duty was barred

11

due to the privilege defense does not apply to its breach of fiduciary duty to the extent it seeks equitable relief – disgorgement of the wine paid to Roach. According to Cellars, the conduct upon which it seeks equitable relief occurred before the lawsuit, so it cannot be barred by the privilege defense. However, Cellars brought only one claim for breach of fiduciary duty. As the Court found in the Order on the parties' motions for partial summary judgment and adjudication, and as Cellars itself argued in its trial brief, Roach's breach of fiduciary duty occurred when he, as an attorney, entered, or purported to enter, into an agreement with his client to obtain an ownership interest in Cellars in violation of Rule 3-300. (Dkt. Nos. 168, 201.) That one breach caused damage and gave rise to Cellars' request for disgorgement. The fact that Cellars seeks different types of relief incurred at different times – damages in the form of attorneys' fees and disgorgement of the wine paid to Roach – for the same breach of fiduciary duty does not render its request for disgorgement a separate claim. The jury found that Cellars' one claim for breach of fiduciary duty was barred by privilege. (Dkt. No. 286.) The jury's finding applies to the entire claim, including Cellars' request to disgorge the value of the wine Roach received under the unenforceable agreement.

Alternatively, to the extent Cellars could maintain a separate claim for breach of fiduciary duty based solely on the taking of fees or obtaining benefits in the form of wine under the agreement made in breach of Roach's fiduciary duty, any such separate claim would be barred by the statute of limitations. It is undisputed that the legal representation ended in 2016, five years before the lawsuit was brought. If Cellars could bring a breach of fiduciary duty claim separate from its claim for damages, then the jury's finding on statute of limitations would not apply. The jury's finding was premised on Cellars incurring damages by paying attorney's fees to resolve the ownership dispute. To the extent Cellars could maintain a separate claim for breach of fiduciary duty based on the taking of fees or obtaining benefits in the form of wine, it would be governed by California Code of Civil Procedure section 340.6, which provides:

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four

12

years from the date of the wrongful act or omission, whichever occurs first. . . .

Cal. Civ. Proc. Code § 340.6(a). Even if Roach's accepting the wine is considered the wrongful act (and the payment in wine is the injury), the last wine would have been paid when the legal representation ended in 2016, more than four years before Cellars filed his Complaint in this action. Therefore, any such claim would be time-barred.

**B.      Motion by Roach for Judgment as a Matter of Law.**

Despite the jury verdict finding in his favor on Cellars' claim for breach of fiduciary duty, Roach brings several motions requesting rulings both in conformity with the jury's specific findings and in opposition to the jury's specific findings. Roach renews his motion for judgment as a matter of law ("JMOL"), which he had originally asserted during trial. Roach's JMOL motion is based on several arguments: (1) there is no basis for the jury to find damages (which the jury did not find); (2) Roach's conduct was privileged as a matter of law (which the jury found); (3) the statute of limitations barred Cellars' claim for breach of fiduciary duty (which the jury rejected), (4) there is no basis for the jury to find causation (which the jury found); (5) there is no basis for the jury to award damages in the form of attorneys' fees to Cellars because Cellars did not segregate its fees (regarding damages which the jury did not award); (6) Cellars is not entitled to disgorgement (which was not awarded); (7) a claim for declaratory relief cannot support a claim for disgorgement (which was not awarded); (8) the Court improperly ignored the rulings of Texas disciplinary authorities that found no wrongdoing by Roach; (9) the evidence conclusively supports Roach's affirmative defenses of unclean hands, unjust enrichment, waiver, fraud, equitable estoppel, and ratification (which the jury did not reach).

To the extent that Roach seeks JMOL on issues that the jury never reached because of the finding that the litigation privilege applied, the Court reviews the evidence not as the jury found but at the time the case was submitted to the jury.

**1.      Evidence Existed to Support Damages.**

There is evidence from which the jury could find that Cellars sustained damages as a result of Roach's breach of fiduciary duty. There was evidence in the record to show that Cellars had to incur legal fees and costs to fight Roach in this litigation. (3/8/2023 Trial Tr. at 202:4-6; Trial Ex.

13

56.)  Roach argues that Cellars did not incur legal fees in this litigation because Fred paid them, but Fred testified that there was an agreement in which Cellars was required to pay him for those fees if he was awarded attorneys' fees as damages in this matter.  (3/8/2023 Trial Tr. at 203:7-16). That evidence is sufficient to show that Cellars sustained damage.

Under the collateral source doctrine, if a plaintiff has an obligation to pay, then that plaintiff has been damaged, even if another source is covering the loss.  *See*, *e.g.*, *Staley v. Gilead Scis.*, *Inc.*, 2022 WL 1158006, at *7 (N.D. Cal. Apr. 19, 2022); *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1145 (M.D. Fla. 2018).  Additionally, indemnification agreements do not affect the issue of liability or damages.  *See*, *e.g.*, *Andrews v. Cnty. of Orange*, 2021 WL 6496831, at *5 (C.D. Cal. July 27, 2021) ("whether [co-defendant] will indemnify [defendants is] irrelevant to the question of liability or compensatory damages."); *see also Larez v. Holcomb*, 16 F.3d 1513, 1519 (9th Cir. 1994) ("[i]t has long been the rule in our courts that evidence of insurance or other indemnification is not admissible on the issue of damages").

**2.     Evidence Supported that Litigation Privilege Defense Did Not Apply.**

Roach argues that his alleged conduct is privileged as a matter of law and, thus, he is exempt from liability as a matter of law.  However, although the jury found that the litigation privilege applied, there was evidence to support Cellars' position that the litigation privilege did not apply, as discussed above.  Roach argued that Cellars filed this lawsuit as a result of his filing of the Texas litigation.  Cellars submitted evidence that it filed this lawsuit to rebut Roach's public and private statements that he owned Cellars.  (3/8/2023 Trial Tr. at 201:11-17).  Interpreted in the light most favorable to Cellars, the non-moving party, there is sufficient evidence from which a jury could find that the litigation privilege did not apply.

**3.     Evidence Supported Jury's Finding that Statute of Limitations Did Not Bar Claim for Breach of Fiduciary Duty.**

There was evidence to show that the statute of limitations did not bar this case.  As discussed in the Order regarding summary judgment, the one-year statute of limitations for actions against lawyers applies to the claim for breach of fiduciary duty.  (Dkt. No. 168.)  Roach argued "that the statute of limitations accrued on May 16, 2019, when Constellation, the owner of Cellars,

14

sought and obtained indemnity from Fred in the Texas litigation" and thus that the statute of limitations expired on May 16, 2020, before Cellars filed this suit in February 2021. (Dkt. No. 168 (citing Dkt. No. 130-3 at page 21).) Cellars argued that the statute of limitations accrued on January 11, 2021, when Roach filed his Fifth Amended Petition in the Texas litigation and, thus, that Cellars was within the statute by filing in February 2021. (Dkt. No. 168.)

Cellars provided evidence that Cellars could not have known that Roach was seeking ownership of Cellars – the triggering event for filing this suit, because Roach specifically stated in the Texas litigation that he was not seeking ownership of Cellars, that he successfully barred Cellars from participating in the Texas litigation, and that the first time that Cellars learned that Roach was claiming that he would be the owner of Cellars was in early 2021. The jury found that Cellars did not know or could not have discovered with reasonable diligence the facts of Roach's alleged wrongful act or omission before September 2, 2019, and that Cellars did not sustain damages until September 2, 2019. (Dkt. No. 286.) This evidence, taken in the light most favorable to Cellars, shows that there was evidence to support the jury's finding that the statute of limitations did not bar Cellars' claim for breach of fiduciary duty.

### 4. Evidence Supported Causation.

Roach argues that Cellars could not recover fees because the American rule precludes an award of damages to Cellars. However, under California law, a plaintiff may assert as damages fees that are incurred by employing new attorneys where "necessary to avoid or minimize the consequences of a former attorney's actions." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 826 (2011). Here, there was evidence to show that, because of the breach of fiduciary duty by Roach, Cellars suffered damages in being forced to file this suit to "clear title" to Cellars.

### 5. Evidence Supported Segregation of Attorneys' Fees.

With regard to the argument that Cellars was not entitled to attorneys' fees because Cellars did not segregate its fees from fees spent in the Texas litigation. However, there is evidence to show that Cellars did segregate its fees from fees incurred for representing Constellation and Fred in the Texas litigation. (3/9/2023 Trial Tr. at 405:4-408:20). Thus, the evidence interpreted in the light most favorable to Cellars was sufficient to show damages.

### 6. Evidence Supported Disgorgement.

Roach argues that disgorgement was not an available remedy because Cellars suffered no damages. But as discussed above, the evidence interpreted in the light most favorable to Cellars shows that there was harm, and the jury in fact found that Cellars was harmed. It is also clear that disgorgement is a remedy for breach of fiduciary duty. *Cnty. Of San Bernardino v. Walsh*, 158 Cal. App. 3d 533, 543 (2007), *as modified on denial of reh'g* (Jan. 25, 2008), *as modified* (Jan. 28, 2008) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"). The evidence at trial showed that Roach received cases of wine as payment for his legal services. (3/8/2023 Trial Tr. at 194:4-9.) Cellars sought disgorgement of the value of that wine.

### 7. Evidence of Texas Disciplinary Rulings Was Irrelevant.

Roach argues that the Court ignored the ruling of the Texas bar authorities, who found that Roach did not violate ethical rules of Texas. The Court finds that this argument is misplaced. The Court ruled on this issue for summary judgment, and this was not an issue placed before the jury. But even on the merits, there was sufficient evidence from which a trier of fact could find that Texas law did not apply to this case, as explained in detail in the Order regarding summary judgment. (Dkt. No. 168.) Roach submitted evidence on summary judgment that the Texas authorities analyzed his activity under Texas law, but the Court found that California law governed Roach's activities performed for clients in California, given the nature and extent of his contacts with and travel to California. (Dkt. No. 168.) Thus, that a Texas governing board, applying Texas law, found that Roach did not violate Texas law – which is also materially different from California law on the key issue – is irrelevant.

### 8. Evidence Existed to Rebut Affirmative Defenses of Unclean Hands, Unjust Enrichment, Waiver, Fraud, Equitable Estoppel, and Ratification.

There was sufficient evidence to counter the affirmative defenses of unclean hands, unjust enrichment, waiver, fraud, equitable estoppel, and ratification. Roach argues that the undisputed evidence showed that Cellars tricked him into providing funds for RBS but did not intend to treat it as an investment and that this fraud forms the basis of his affirmative defenses for unclean hands, unjust enrichment, waiver, fraud, equitable estoppel, and ratification. As noted in ruling on

16

the summary judgment/adjudication motions, there was a factual dispute between the parties about the reason Roach provided funds to Cellars.  Cellars argued that Roach lent the money and that Cellars repaid those funds in full, and Roach claimed that the funds were an investment.  (3/8/23 Trial Tr. at 206:5-11; 212:4-7; *see also* Dkt. No. 128-3 (Low Decl.), Ex. C (Fred Depo.) at 32: 25-33:6, 27:8-11, 40:4-15; Dkt. No. 131-1 (Roach Decl.), ¶¶ 8-9; Dkt. No. 132-1 (MacGregor Decl.), Ex. 51 (Roach Depo.) at 23:25-25:7.)  The evidence interpreted in the light most favorable to Cellars supports a finding against the affirmative defenses.

### C.     Motion by Roach to Dismiss for Lack of Jurisdiction.

Roach also moves to dismiss for lack of jurisdiction.  Roach argues that Cellars suffered no damages and, thus, fails to establish standing under Article III of the U.S. Constitution.  To have standing, a plaintiff must allege (1) an actual or imminent injury or a concrete "invasion of a legally protected interest," (2) causation, and (3) redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  This argument is the same argument Roach makes to argue that Cellars sustained no damages, and for the same reasons set forth above, the Court DENIES this motion.  Although the jury never reached the issue of damages, the jury did find that Cellars sustained harm caused by Roach's breach of fiduciary duty.  Under the collateral source rule noted above, there was evidence in the record showing that Cellars sustained harm even if Fred paid the fees for this action.  For this reason, Cellars established standing for purposes of jurisdiction.

### D.     Motion by Roach to Amend the Judgment or in the Alternative for a New Trial.

Roach also moves to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), or, in the alternative, for a new trial under Federal Rule of Civil Procedure 59(a).  Roach seeks an amended judgment to show that he did not breach his fiduciary duty to Cellars, or, in the alternative, a new trial so that the jury can consider whether he breached his fiduciary duty to Cellars.  The Court DENIES this motion.

The Ninth Circuit has explained:

> In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously

> unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

Allstate Ins. Co. v. Herron 634 F.3d 1101, 1111 (9th Cir. 2011) (internal citation omitted). This power to amend judgment is" an extraordinary remedy which should be used sparingly." *Id*. (internal citation and quotation omitted).

Roach argues that there was a manifest error of law and that the Court acted in a manifestly unjust manner because a violation of a professional rule of responsibility under California law does not alone constitute a breach of fiduciary duty by the attorney. He ignores, though, established case law showing that the California legislature expressly made a violation of Rule 3-300 of the California Rules of Professional Conduct actionable under California Probate Code §16004 if the presumption under the Probate Code is not rebutted. Probate Code § 16004 "creates a presumption that transactions between an attorney and client, by which the attorney obtains an advantage, are a breach of the attorney's fiduciary duty and are the product of undue influence." *Pizzorno v. Draper*, 2017 WL 4712071, at *6 (C.D. Cal. July 7, 2017) (quoting *BGJ Assocs. v. Wilson*, 113 Cal. App. 4th 1217 (2003)). A "transaction between an attorney and client which occurs during the relationship and which is advantageous to the attorney is presumed to violate that fiduciary duty[.]" *Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1152 (2011) (internal citation and quotation marks omitted) (finding that attorney who violated Rule 3-300 failed to rebut presumption and thus was found to have "breached his fiduciary duty" to his client). Once this presumption of breach of fiduciary duty is created, "the burden of proof is always upon the attorney to show that the dealing was fair and just, and that the client was fully advised." *Id*. at 1553. When the attorney fails to rebut the presumption, the attorney's violation constitutes a breach of the attorney's fiduciary duty. *Id*. at 1151-1156.

Here, it is undisputed that there was no writing to memorialize the agreement between Roach and Cellars, and there was no evidence at the summary judgment stage or at trial that the client, Cellars, was "fully advised" or that the transaction was fair and reasonable, as required by California law. Tellingly, even on this motion Roach points to no evidence that he fully advised Cellars or that the transaction was fair and reasonable. Thus, under these circumstances, an

instruction to the jury that Roach had breached his fiduciary duty to Cellars, based on his violation of Rule 3-300 and failure to rebut the presumption of breach of fiduciary duty, was correct. There is no ground to alter the judgment.

Roach also argues other errors, all of which are discussed in the motion for his motion for judgment as a matter of law. Again, there was no error and no reason to alter the judgment.

Separately, Roach argues that he is entitled to a new trial for the jury to determine whether he breached his fiduciary duty to Cellars because the question of whether there is a breach of fiduciary duty is a question of fact. Again, for the reasons set forth above, the verdict is not contrary to the clear weight of evidence and is not based on false evidence. Finally, the verdict does not create a miscarriage of justice. Here, the undisputed evidence showed that Roach provided legal services to Cellars as part of a business arrangement without a written agreement memorializing that agreement. The undisputed evidence also shows that Roach performed some of these services in many visits to California over many years, and that California's Rules of Professional Responsibility governed his behavior. Roach did not show that he fully advised Cellars or that the transaction was fair and reasonable. There was no evidence to show that Roach could rebut the presumption of the breach of fiduciary duty.

Moreover, Roach requests that the Court exercise discretion to consider both the motion to alter judgment and motion for new trial, even though he won on the sole claim submitted to the jury. The Court will not force a jury to reconsider all the evidence simply so that a winning party can obtain a single finding to his benefit. That use of a scarce resource – the jury's precious time – would be wasteful. Accordingly, the Court DENIES Roach's motion to amend the judgment or in the alternative for a new trial.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the Court DENIES (1) Roach's renewed motion for judgment as a matter of law (Dkt. No. 302); (2) Roach's motion to dismiss for lack of jurisdiction (Dkt. No. 303); (3) Roach's motion to alter judgment (Dkt. No. 304); and (4) Cellar's motion for new trial and renewed motion for judgment as a matter of law.

**IT IS SO ORDERED**.

Dated: June 8, 2023

SALLIE KIM
United States Magistrate Judge