PILLSBURY WINTHROP SHAW PITTMAN LLP
STACIE O. KINSER (Cal. Bar No. 300529)
stacie.kinser@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone:    415.983.1000
FACSIMILE:  415.983.1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
CASEY LOW (Tex. Bar No. 24041363)
*Pro Hac Vice*
casey.low@pillsburylaw.com
SARAH GOETZ (Tex. Bar No. 24109930)
*Pro Hac Vice*
sarah.goetz@pillsburylaw.com
401 W 4th St, Suite 3200
Austin, TX  78701
Telephone:    512.580.9600
Facsimile:    512.375.4901

Attorneys for Plaintiff and Counter-Defendant
SCHRADER CELLARS, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCHRADER CELLARS, LLC,<br><br>                    Plaintiff and Counter-Defendant,<br><br>     vs.<br><br>ROBERT M. (RANDY) ROACH, JR.,<br><br>                    Defendant and Counter-Plaintiff. | Case No. 3:21-cv-01431-SK<br><br>**SCHRADER CELLARS, LLC'S TRIAL BRIEF**<br><br>Pretrial Conference: September 12, 2025<br>Time:            1:30 p.m.<br>Courtroom:    Via Zoom<br>Judge:  Magistrate Judge Sallie Kim |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   CLAIMS AND DEFENSES ............................................................................... 1

III.  ISSUES TO BE DECIDED ................................................................................ 1

IV.   APPLICABLE LEGAL STANDARDS ............................................................. 2

    A.    Declaratory Relief .................................................................................... 2

    B.    Cellars' Uncontroverted Record of Ownership ....................................... 3

    C.    Roach Cannot Meet His Burden to Establish Contrary Title .................. 5

        1.    No Writing to Establish Title or Ownership ................................. 5

        2.    Roach Cannot Sue Individually to Enforce LLC or Partnership Interests ................. 6

        3.    Roach's $135,000 Was Repaid and Cannot Confer Title ............. 6

    D.    Roach's Burden to Establish Enforceable Agreement Conferring Ownership .................. 7

    E.    Roach Must Show A Signed Writing ........................................................ 8

    F.    Roach Cannot Rebut the Presumption of Undue Influence ..................... 9

    G.    Cellars' Affirmative Defenses ............................................................... 10

        1.    Statute of Limitations .................................................................. 10

        2.    Unclean Hands and Estoppel ...................................................... 11

    H.    Roach's Declaratory Relief Fails on Its Face ....................................... 13

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*S.E.C. v. Am. Capital Investments, Inc.*,
 99 F.3d 1146 (9th Cir. 1996) ...................................................................................7

*Bank of New York Mellon v. Citibank, N.A.*,
 214 Cal. Rptr. 3d 504 (Cal. Ct. App. 2017).........................................................10

*Barcelon v. Cortese*,
 263 Cal. App. 2d 517, 69 Cal. Rptr. 657 (Ct. App. 1968) .....................................8

*Barranco v. 3D Sys. Corp.*,
 952 F.3d 1122 (9th Cir. 2020) ...............................................................................14

*United States v. Basye*,
 410 U.S. 441 (1973).................................................................................................4

*Bayley v. Greenleaf*,
 20 U.S. (7 Wheat.) 46 (1822)..................................................................................5

*BGJ Assocs. v. Wilson*,
 7 Cal. Rptr. 3d 140 (Cal. Ct. App. 2003) ...............................................................9

*Carnation Co. v. Olivet Egg Ranch*,
 189 Cal. App. 3d 809 (Ct. App. 1986)....................................................................6

*Cheema v. L.S. Trucking, Inc.*,
 39 Cal. App. 5th 1142 (2019) .................................................................................7

*City of Long Beach v. Mansell*,
 3 Cal. 3d 462 (1970) .............................................................................................13

*Communist Party v. 522 Valencia, Inc.*,
 41 Cal. Rptr. 2d 618 (Cal. Ct. App. 1995) ......................................................4, 5, 7

*In re Cybernetic Servs., Inc.*,
 252 F.3d 1039 (9th Cir. 2001) .................................................................................4

*Davis Wine Imports, LLC v. Vina Y Bodega Estampa, S.A.*,
 No. CV-10-650-HU, 2011 WL 13250769 (D. Or. Mar. 11, 2011)..........................6

*Dep't of Parks and Rec. for State of Calif. v. Bazaar Del Mundo Inc.*,
 448 F.3d 1118 (9th Cir. 2006) .................................................................................4

*E.K. Wood Lumber Co. v. Moore Mill & Lumber Co.*,
    97 F.2d 402 (9th Cir. 1938) ..................................................................................8

*Estill v. Cnty. of Shasta*,
    25 Cal. App. 5th 702 (2018) ...............................................................................11

*Fair v. Bakhtiari*,
    125 Cal. Rptr. 3d 765 (Cal. Ct. App. 2011) ....................................................9, 10

*Fladeboe v. Am. Isuzu Motors Inc.*,
    150 Cal. App. 4th 42 (2007) ...............................................................................12

*Goldstein v. Lees*,
    46 Cal. App. 3d 614 (1975) ................................................................................12

*Internet Direct Response, Inc. v. Buckley*,
    2011 WL 835607 (C.D. Cal. Mar. 7, 2011) ..........................................................7

*Jackson v. Cnty. of Los Angeles*,
    60 Cal. App. 4th 171 (1997) ...............................................................................12

*Johnson v. Myers*,
    2011 WL 4533198 (N.D. Cal. Sep. 30, 2011) .......................................................6

*Jolley v. Chase Home Fin., LLC*,
    153 Cal. Rptr. 3d 546 (Ct. App. 2013), *as modified on denial of reh'g* (Mar. 7, 2013) ..........14

*Jolly v. Eli Lilly & Co.*,
    751 P.2d 923 (Cal. 1988) ....................................................................................11

*Kline v. Turner*,
    87 Cal. App. 4th 1369 (2001) .........................................................................10, 11

*Kramas v. Sec. Gas & Oil, Inc.*,
    672 F.2d 766 (9th Cir. 1982) ..............................................................................11

*Levald, Inc. v. City of Palm Desert*,
    998 F.2d 680 (9th Cir. 1993) ..............................................................................10

*Lewis v. Hayes*,
    177 Cal. 587 (1918) ..............................................................................................6

*Lindsey v. Starwood Hotels & Resorts WorldWide, Inc.*,
    2008 WL 11363357 (C.D. Cal. June 13, 2008) .....................................................6

*Mao-Mso Recovery II LLC v. Mercury Gen.*,
    No. 2:17-CV-2525, 2021 WL 6102913 (C.D. Cal. Nov. 29, 2021), *aff'd*, No. 21-56395, 2023
    WL 1793469 (9th Cir. Feb. 7, 2023) ....................................................................5

*McGraw–Edison Co. v. Preformed Line Prods. Co.*,
    362 F.2d 339 (9th Cir. 1966) .................................................................................2

*McKelvey v. Boeing N. Am., Inc.*,
    86 Cal. Rptr. 2d 645 (Ct. App. 1999), *as modified* (July 14, 1999).........................................11

*Norgart v. Upjohn Co.*,
    981 P.2d 79 (1999).................................................................................11

*Oddo v. Ries*,
    743 F.2d 630 (9th Cir. 1984) .................................................................................13

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
    897 F.3d 1008 (9th Cir. 2018) .................................................................................4

*Persson v. Smart Inventions, Inc.*,
    23 Cal. Rptr. 3d 335 (Ct. App. 2005) .................................................................................6

*Pharmacia Corp. v. Alcon Lab'ys, Inc.*,
    201 F. Supp. 2d 335 (D.N.J. 2002) .................................................................................4

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
    522 F.3d 1049 (9th Cir. 2008) .................................................................................11

*Priester v. Citizens Nat'l Tr. & Sav. Bank of Los Angeles*,
    131 Cal. App. 2d 314 (1955) .................................................................................9

*Reeder v. Specialized Loan Servicing LLC*,
    52 Cal. App. 5th 795 (2020) .................................................................................8

*San Francisco Brewing Corp. v. Bowman*,
    343 P.2d 1 (Cal. 1959) .................................................................................8

*Schrader Cellars, LLC v. Roach*,
    129 F.4th 1115 (9th Cir. 2025) .................................................................................9, 10

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
    96 F.3d 1217 (9th Cir. 1996), *as modified*, 97 F.3d 1460 (9th Cir. 1996).................................................................................3

*Serpa v. Jolly King Restaurants, Inc.*,
    62 F.R.D. 626 (S.D. Cal. 1974) .................................................................................6

*Solarmore Mgmt. Svcs. Inc. v. Bankr. Estate of DC Solar Sols.*,
    2021 WL 3077470 (E.D. Cal. July 21, 2021) .................................................................................6

*Spokane Indian Tribe v. United States*,
    972 F.2d 1090 (9th Cir. 1992) .................................................................................2

*Spray, Gould & Bowers v. Assoc. Int'l Ins. Co.*,
    71 Cal. App. 4th 1260 (1999) ...................................................................13

*T & O Mobile Homes, Inc. v. United Cal. Bank*,
    709 P.2d 430 (Cal. 1985) ..........................................................................5

*Thomas v. Gordon*,
    85 Cal. App. 4th 113 (2000) ....................................................................12

*Union Bank v. Superior Ct.*,
    37 Cal. Rptr. 2d 653 (Ct. App. 1995) ......................................................14

*Vermeran v. Eastland*,
    No. 07-CV-1976, 2008 WL 11337357 (S.D. Cal. June 18, 2008) ........................6, 8

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987) ..................................................................11

*In re Witt's Est.*,
    245 P. 197 (Cal. 1926) ..............................................................................9

*Yamauchi v. Cotterman*,
    84 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................11

<u>Statutes and Codes</u>

United States Code
    Title 15, Section 1060(a)(3) ..................................................................5, 9
    Title 28, Sections 2201–2202 ...................................................................1

Title 28, Section 2201(a) ..............................................................................2
    California Civil Code
    Section 1213 .............................................................................................4
    Section 1473 .............................................................................................6
    Section 1624 ....................................................................................4, 5, 8
    Section 1698(a) .........................................................................................9

California Code of Civil Procedure
    Section 338(d) ....................................................................................10, 11
    Section 389 ...............................................................................................6
    Section 1060 .............................................................................................1

California Commercial Code
    Section 2201 ....................................................................................4, 5, 8
    Section 9106 et seq. ...................................................................................4

California Corporations Code
    Section 15910.01(b) ................................................................................6
    Section 15910.02 ....................................................................................6
    Section 15910.03 ....................................................................................6
    Section 17300 .........................................................................................6
    Section 17704.06(e) ............................................................................10
    Section 17707.07(2)(b) ......................................................................10

California Evidence Code
    Section 623 ...........................................................................................13

California Probate Code
    Section 16004 .............................................................................2, 9, 10

<u>Rules and Regulations</u>

California Rules of Professional Conduct
    Rule 3-300 ........................................................................................9, 10

<u>Other Authorities</u>

6 McCarthy on Trademarks and Unfair Competition, Section 16:36, n.1 (5th ed.) ...................5, 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

This bench trial is to resolve competing declaratory judgment claims and to quiet title to ownership over Schrader Cellars and its assets and intellectual property. Cellars will present uncontroverted ***documentary*** evidence of its uninterrupted membership, equity, and title to its assets and inventory, to the exclusion of any rights or ownership claimed by Defendant and Counter-Plaintiff Randy Roach ("Roach").

## II.     CLAIMS AND DEFENSES

Schrader Cellars' sole claim is for declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2202 and Cal. Code Civ. Proc. § 1060, that: (1) there were no liens or encumbrances on any of Schrader Cellars, LLC's physical assets or intellectual property when Schrader Cellars, LLC became a wholly-owned subsidiary of Franciscan Vineyards (n/k/a) TPWC, Inc.; (2) all right, title, and interest to the claimed assets are the sole property of Schrader Cellars, LLC, including all physical assets, inventory, and intellectual property associated with Schrader Cellars and the SCHRADER marks; (3) Roach has zero percent membership interest in Schrader Cellars, LLC; and (4) Roach has no rights or title to Schrader Cellars' assets or trademarks, including the Schrader RBS mark. Roach's remaining third through sixth causes of action seek declaratory judgments that Roach owns RBS and that Cellars is equitably estopped from denying Roach's ownership interest in Schrader Cellars and RBS, and equitable accounting.

Cellars asserts that, even if Roach could establish some interest in Cellars or its assets, that interest is not superior to Cellars' property rights. Any claims arising from Roach's fictitious interest would otherwise be barred because any agreement purportedly conferring him ownership is not enforceable under the statute of frauds and the California Probate Code, and because Roach's claims are barred by Cellars' affirmative defenses of statute of limitations, laches, estoppel, waiver, unclean hands, complete payment, and lack of standing. *See* Dkt. 58.

## III.    ISSUES TO BE DECIDED

To determine both parties' dueling requests for declaratory relief and Roach's contingent claim for equitable accounting, the Court must decide:

(1) Whether Cellars can prove by a preponderance of the evidence that it holds record title to its

assets, intellectual property, and inventory, record ownership of its membership interests, and that such assets and interests were transferred unencumbered to Franciscan Vineyards (n/k/a) TPWC, Inc.;

(2) Whether Roach can prove by a preponderance of the evidence that a distinct "RBS entity" (either an oral partnership or RBS LLC) has a superior enforceable ownership interest in Schrader Cellars LLC or any of its assets; and, *if so*,

(3) Whether Roach can prove, by a preponderance of the evidence, that he has a legally valid interest in any "RBS entity" and standing to bring suit on the entity's behalf; and, *if so*,

(4) Whether Roach can prove, by a preponderance of the evidence, a meeting of the minds to form an enforceable oral agreement, consistent with the statute of frauds, to create an RBS entity and confer ownership of certain Cellars' assets, and for Roach to be entitled to equity and proceeds from the RBS wine in perpetuity; and, *if so*,

(5) Whether Roach can prove, by clear and convincing evidence, that oral agreement was "fair and reasonable" to Fred and Cellars and Fred and Cellars were fully advised of its terms with the opportunity to obtain independent legal advice, as required by CRPC 3-300 and Probate Code § 16004; and, *if so*,

(6) Whether Roach can prove, by a preponderance of the evidence, that he did not know and through the exercise of reasonable diligence would not have known by June 9, 2018, three years before bringing his counterclaims, that Fred or Cellars had defrauded him or otherwise extinguished his claimed interest; and, *if so*,

(7) Whether Roach can establish, by a preponderance of the evidence, that he is entitled to a declaration of equitable estoppel and contingent remedy of equitable accounting based on the existence of an oral agreement with his clients; and, *if so*,

(8) Whether Cellars can show, by a preponderance of the evidence, that Roach's recovery is barred by the defenses of unclean hands or estoppel.

## IV.    APPLICABLE LEGAL STANDARDS

### A.    Declaratory Relief

The Declaratory Judgment Act permits courts to "declare the rights and other legal relations" between parties where there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992) (quotations omitted); 28 U.S.C. § 2201(a). Declaratory judgments are proper when a judgment will clarify and settle legal relations, and terminate the uncertainty giving rise to the proceeding. *McGraw–Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (citation omitted).

The parties assert conflicting claims of ownership over assets associated with a wine bottled

1    and sold under the label "Schrader Cellars RBS," including the intellectual property, contracts,

2    physical wine, and other tangible and intangible property rights. Cellars points to an uncontested and

3    lengthy written record of ownership, while Roach claims ownership through a purported oral

4    agreement and informal "proof" otherwise, clouding title. A declaration of superior title will clarify

5    who is the rightful legal owner and terminate the uncertainty and title cloud.

6    **B.    Cellars' Uncontroverted Record of Ownership**

7    The Court's analysis begins with the determination of Cellars' membership interests and legal

8    title to its assets. If these facts are not considered undisputed, Cellars will prove its clearly documented

9    corporate equity, membership, and ownership, and that Cellars has, since its founding, held all legal

10   right, title, and interest to all of its assets, inventory, and intellectual property.

11   ***First,*** a preponderance of the evidence will establish that Cellars' members, and their

12   respective membership interests, have been clearly documented—and never included Roach.

13   ***Second,*** Roach claims an ownership interest in the "**RBS assets**," which Roach defines to

14   include "the RBS wine, the RBS product line, the RBS trademark, the RBS brand, the RBS inventory,

15   the goodwill associated with RBS, the past, present, and future proceeds from the sale of RBS, and

16   the rows of the Clone 337 grapes in Beckstoffer's To Kalon vineyard designated to make RBS." Dkt.

17   54, ¶ 74. However, Roach cannot meet his burden to controvert Cellars' documented evidence of

18   ownership for each category of the "RBS Assets":

19   **Physical Inventory.** Cellars will present evidence that it has always been the title owner of all

20   physical property and the contracting party and the holder of registered licenses for operation,

21   distribution, and sale of its wines for states across the country.

22   **Intellectual Property.** Cellars will establish that it owns registered trademarks for RBS wine that

23   were registered upon public notice after going uncontested, and which have never been subjected to

24   any cancellation proceedings before the USPTO, as well as common law rights to those marks based

25   on commercial use for the last 25 years. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217,

26

27

28

1    1219 (9th Cir. 1996), *as modified*, 97 F.3d 1460 (9th Cir. 1996). [1]

2    **Lease Agreement.** Cellars will show it is the only party who has entered into a written contract

3    for the purchase of the specific "rows of the Clone 337 grapes" identified by Roach, and only written

4    agreements are enforceable in California. Cal. Civ. Code § 1624; Cal. Com. Code § 2201.

5    **RBS Proceeds.** While Roach seeks "the past, present, and future proceeds from the sale of RBS,"

6    he has explicitly disclaimed any intent to seek money damages in this litigation. *See, e.g.*, Dkt. 362, p.

7    13. Moreover, as either a member of RBS LLC or a "partner" in Schrader RBS, Roach was required

8    to report the revenue and expenses of the entity ***regardless of whether he received any income***. *United*

9    *States v. Basye*, 410 U.S. 441, 447–48 (1973). As Cellars will show, it was the only entity that ever

10   recognized any income, revenue, or profits related to Schrader RBS on its tax returns, whereas Roach

11   admits he never reported any profits from RBS or filed any K-1s.

12        The foregoing records are precisely the types of evidence courts use to determine ownership

13   of corporate equity and assets. *See, e.g.*, *Pharmacia Corp. v. Alcon Lab'ys, Inc.*, 201 F. Supp. 2d 335,

14   383 (D.N.J. 2002) ("[T]he very purpose of publication . . . is to allow '[a]ny person who believes that

15   he would be damaged by the registration of a mark' to oppose it."); *Communist Party v. 522 Valencia,*

16   *Inc.*, 41 Cal. Rptr. 2d 618, 625 (Cal. Ct. App. 1995) (rejecting claimed owner's declaratory judgment

17   of ownership and constructive trust where "none of the incorporating documents, official records or

18   documentation pertaining to the two corporations indicated that they were founded by the Party or in

19   any way controlled by it, or that the Party owned any of the corporations' assets."). Indeed, this case

20   illustrates the importance of California's policy requiring public filing of security interests in real and

21   personal property, including intellectual property. *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1045

22   (9th Cir. 2001) (citing Cal. Com. Code § 9106 et seq.); *see also* Cal. Civ. Code § 1213. That rule exists

23   to enable third parties, including purchasers like Constellation, "to ascertain the existence of security

24   interests in the property by checking a centralized record system" and thus protect themselves from

25

26   _____
     [1] *See also Dep't of Parks and Rec. for State of Calif. v. Bazaar Del Mundo Inc*., 448 F.3d 1118, 1125–
     26 (9th Cir. 2006) (use of the mark must be continuous and uninterrupted to establish priority of use);

27   *id.* at 1131 ("Moreover, even if [registrant] were shown to have fraudulently obtained federal
     registration of the marks, its common law rights in the marks would continue unabated."); *OTR Wheel*

28   *Eng'g, Inc. v. W. Worldwide Servs., Inc*., 897 F.3d 1008, 1022 (9th Cir. 2018) (If a registration is
     cancelled for fraud, "a claim for infringement may still be pursued based on an unregistered mark.").

1    claims exactly like Roach's. *T & O Mobile Homes, Inc. v. United Cal. Bank*, 709 P.2d 430, 433 (Cal.

2    1985). To permit "secret lien[s]" like the agreement Roach claims would, in contrast, "counteract the

3    spirit" of the law in every state in the Union. *Bayley v. Greenleaf*, 20 U.S. (7 Wheat.) 46, 57–58 (1822).

### C.    Roach Cannot Meet His Burden to Establish Contrary Title

5    The Court's finding as to Cellars' uncontroverted record title should be dispositive on Roach's

6    inverse claims, all of which hinge on the ownership question, as Roach acknowledges. *See* Dkt. 39, p.

7    11. In contrast, Roach lacks any legally cognizable evidence of any title, much less superior title that

8    he would have to prove through a written contract, lien, or other secured instrument attached to Cellars

9    or its assets. Instead, Roach asserts ownership through an oral agreement, through which he claims

10    RBS LLC owned "RBS wine" produced by Cellars, of which he claims a 50% equity interest. But

11    Roach cannot point to any writing memorializing any alternate enforceable ownership interest in

12    Cellars or its assets. Moreover, it is undisputed that RBS LLC was dissolved in 2013, and thus could

13    not possibly have a present ownership interest in anything.

### 1.    *No Writing to Establish Title or Ownership*

15    Without any evidence of legal title, Roach cannot overcome Cellars' documented ownership.

16    *See 522 Valencia,* 41 Cal. Rptr. 2d at 624–25 ("Rather than arguing that it had actual legal title to the

17    corporations' assets, respondent asserts that '[i]t is reasonable to infer' from evidence in the record

18    that it was *entitled* to ownership of these assets . . . ."); *see also Mao-Mso Recovery II LLC v. Mercury

19    Gen*., No. 2:17-CV-2525, 2021 WL 6102913, at *5 (C.D. Cal. Nov. 29, 2021), *aff'd*, No. 21-56395,

20    2023 WL 1793469 (9th Cir. Feb. 7, 2023) ("Plaintiffs had failed to show their legally protected interest

21    in the J.R. claim because they had failed to show any ownership interest through the assignment

22    chain."). Similarly, any trademark assignment requires a writing, *see* 15 U.S.C. § 1060(a)(3), as would

23    any assignment, sale, or licensing of the grape contracts or inventory, *see* Cal. Civ. Code § 1624; Cal.

24    Com. Code § 2201. Roach cannot present evidence of either. And even if this phantom entity *did*

25    somehow own a trademark, that does not mean Roach has any rights to that trademark. *See* 6 McCarthy

26    on Trademarks and Unfair Competition § 16:36, n.1 (5th ed.) ("If a corporation is using a mark, then

27    principal officer and shareholder is not the 'owner.'"). Finally, as discussed below, Roach's assertion

28    that an LLC or partnership owned the assets must still overcome the statute of frauds given the value

of the assets involved, and since Roach admits the "terms" of the deal could not be performed within a year. *See id.*; *Vermeran v. Eastland*, No. 07-CV-1976, 2008 WL 11337357, at *3 (S.D. Cal. June 18, 2008) (contract that could not be completed within a year "unenforceable without a writing").

### 2.   *Roach Cannot Sue Individually to Enforce LLC or Partnership Interests*

Roach does not claim to own Cellars' assets or equity individually, instead claiming it through RBS LLC. But Roach lacks standing to pursue relief on behalf of that entity. "[B]ecause members of the LLC hold no direct ownership interest in the company's assets, the members cannot be directly injured when the company is improperly deprived of those assets." *Solarmore Mgmt. Svcs. Inc. v. Bankr. Estate of DC Solar Sols.*, 2021 WL 3077470, at *3 (E.D. Cal. July 21, 2021); Cal. Corp. Code § 17300. This rule does not change when the entity is dissolved. *See, e.g.*, *Johnson v. Myers*, 2011 WL 4533198 at *9 (N.D. Cal. Sep. 30, 2011).

Roach's passing reference to an "oral partnership" he claims the LLC formalized fares no better. Roach's own theory is that the LLC supplanted the partnership. *Persson v. Smart Inventions, Inc.*, 23 Cal. Rptr. 3d 335, 347 (Ct. App. 2005) (noting "a partnership does not continue to exist after the formation of a corporation"); *Davis Wine Imports, LLC v. Vina Y Bodega Estampa, S.A.*, No. CV-10-650-HU, 2011 WL 13250769, at *4 (D. Or. Mar. 11, 2011) (applying *Persson* in LLC context). Moreover, "California law clearly provides that a partner may not recover on a cause of action belonging to the partnership." *Serpa v. Jolly King Restaurants, Inc.*, 62 F.R.D. 626, 633 (S.D. Cal. 1974); *accord Lindsey v. Starwood Hotels & Resorts WorldWide, Inc.*, 2008 WL 11363357, at *3 (C.D. Cal. June 13, 2008) (citing *Carnation Co. v. Olivet Egg Ranch*, 189 Cal. App. 3d 809, 821 n.19 (Ct. App. 1986); *Lewis v. Hayes*, 177 Cal. 587, 589–90 (1918)); Cal. Corp. Code §§ 15910.01(b), 15910.02; *see also* Cal. Code Civ. P. § 389. And just as the dissolved LLC itself can no longer sue, neither can any "partnership" that no longer existed "at the time the action [was] commenced." Cal. Corp. Code § 15910.03.

### 3.   *Roach's $135,000 Was Repaid and Cannot Confer Title*

Roach claims that his $135,000 in payments from 2001-2003 confers him ownership over Cellars and the "RBS assets." But Roach's contributions were repaid in full with interest by 2010, which would have extinguished any interest. *See* Cal. Civ. Code § 1473 ("Full performance of an

obligation . . . if accepted by the creditor, extinguishes it."). Roach also ignores that providing funds to a corporation "does not provide sufficient evidence that the party owned or was entitled to possession of all of the corporation's property and assets." *522 Valencia*, 35 Cal. App. 4th at 994; *Internet Direct Response, Inc. v. Buckley*, 2011 WL 835607, at *8 (C.D. Cal. Mar. 7, 2011) (holding while "in some circumstances profits derived from wrongfully retained property can be subject to a constructive trust[,] [t]hat does not mean that Plaintiff is excused from showing that it has an ownership interest in the property generating the profit."); *see also S.E.C. v. Am. Capital Investments, Inc.*, 99 F.3d 1146 (9th Cir. 1996) ("The party for whom a constructive trust is created either has legal title or was *intended* to have legal title.").

### D.    Roach's Burden to Establish Enforceable Agreement Conferring Ownership

Roach's sole basis for overcoming the lack of evidence of title is his assertion that an oral agreement between him and Fred in 2000 conferred either RBS LLC or an oral partnership sole ownership in the "RBS wine" that was otherwise produced and sold by Cellars. Roach also asserts when Cellars deposited $135,000 in checks that Roach made out to Cellars into its own bank account, such "commingling" gives him a right to ownership of Cellars itself. Even if an oral agreement were enforceable, Roach would first need to prove by a preponderance of the evidence that Cellars knowingly agreed to such an arrangement, *i.e.* a meeting of the minds.

While both Roach and Fred have testified to the payment and repayment of $135,000 with interest, and legal services performed, Roach must also prove Cellars or Fred also agreed to the numerous additional terms he asserts: RBS LLC's exclusive ownership of all assets associated with Schrader Cellars RBS wine, the division of any proceeds from RBS sales in perpetuity, and the other essential terms of the separate entity such as operation, equity, profits, term, and dissolution. *Cheema v. L.S. Trucking, Inc.*, 39 Cal. App. 5th 1142, 1149 (2019). Roach must prove that Fred understood and expressly agreed to these terms. Failure to so prove is fatal: "failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." *Id.* (citation omitted). Accordingly, even evidence of partial performance is insufficient for the Court to find a contract was formed.

At most, Roach can prove that there was some oral agreement but that there is a dispute over its terms, because Fred and Roach walked away with different understandings. But under California law, a contract is "void and unenforceable" where "the intention of the parties in material particulars cannot be ascertained." *Reeder v. Specialized Loan Servicing LLC*, 52 Cal. App. 5th 795, 802–03 (2020). "Preliminary negotiations or agreements for future negotiations—so-called agreements to agree—are not enforceable contracts." *Id.* (citation omitted).

### E.    Roach Must Show A Signed Writing

Even if there were a meeting of the minds, Roach's alleged agreement is unenforceable pursuant to California's statute of frauds, which provides that any "agreement that by its terms is not to be performed within a year from the making thereof" is invalid unless it is in writing. Cal. Civ. Code § 1624; *San Francisco Brewing Corp. v. Bowman*, 343 P.2d 1, 6–7 (Cal. 1959) (oral contract lacking a definite duration term but impliedly intended to continue for a reasonable period exceeding one year falls within the statute of frauds and must be in writing to be enforceable); *accord Vermeran*, 2008 WL 11337357, at *3. Similarly, a writing is required for agreements involving the leasing of an interest in real property for longer than a year, loan contracts exceeding $100,000, and contracts for the sale of goods exceeding $500. *Id.*; Cal. Com. Code § 2201. Because Cellars raised the statute of frauds in its answer, the burden is on Roach "to prove that the contract sought to be enforced was in writing." *E.K. Wood Lumber Co. v. Moore Mill & Lumber Co*., 97 F.2d 402, 408 (9th Cir. 1938); *see also Barcelon v. Cortese*, 263 Cal. App. 2d 517, 527, 69 Cal. Rptr. 657, 664 (Ct. App. 1968) ("it became apparent that [the party trying to enforce an agreement] had not met his burden as to the statute of frauds.").

Here, the purported 2000 oral agreement that Roach claims conferred him ownership in RBS fails to confer rights to Cellars' assets under the statute of frauds because it could not be completed within one year, involved the sale of assets for more than $500, involved a loan exceeding $100,000, and involved the leasing of an interest in real property for longer than one year. *Id*. To the extent Roach claims any oral partnership agreement itself is not barred by the statute of frauds, that cannot sidestep the requirement that said partnership still must prove an enforceable agreement with Cellars for ownership of the actual assets. And while Roach claims that he and Fred agreed that "for regulatory

1   and administrative purposes, . . . Cellars would make and sell the wine for our separate RBS business

2   under a verbal license agreement," Roach admitted any license agreement involved assets and rights

3   that must be in writing under the statute of frauds. Dkt. No. 131-1 (Roach Decl.), ¶ 11. Similarly, any

4   assignment of the RBS trademark, to a partnership or otherwise, must still be in writing to be

5   enforceable. 15 U.S.C. § 1060(a)(3). Accordingly, the statute of frauds applies to any vehicle through

6   which Roach claims entitlement to Cellars or any of its assets, as well as any subsequent modifications

7   to any purported oral agreements. *See* Cal. Civ. Code § 1698(a).

8         **F.**      **Roach Cannot Rebut the Presumption of Undue Influence**

9         Even if Roach could prove he had some interest through an oral agreement, judgment must

10  enter for Cellars unless Roach can rebut the presumption of undue influence under CRPC 3-300 and

11  Probate Code § 16004. Roach already admitted that he did not abide by the requirements of Rule 3-

12  300, which the Ninth Circuit held shifted the burden to Roach to dispel the presumption of undue

13  influence. *See Schrader Cellars, LLC v. Roach*, 129 F.4th 1115, 1123, 1124 (9th Cir. 2025). To do so,

14  Roach must show that (1) the oral agreement allegedly conferring him an ownership interest was fair

15  and just, and (2) Fred was fully advised regarding the terms of the transaction. *BGJ Assocs. v. Wilson,*

16  7 Cal. Rptr. 3d 140, 147–48 (Cal. Ct. App. 2003); *see also Fair v. Bakhtiari*, 125 Cal. Rptr. 3d 765,

17  778 (Cal. Ct. App. 2011). Thus, because Roach is a lawyer, to dissipate the undue influence his

18  position presumes, he must prove that Fred's understanding came after full disclosure, with an

19  opportunity to obtain independent legal advice, and that Fred fully understood and consented to those

20  terms after such advice and understanding. *Fair*, 125 Cal. Rptr. 3d at 778.  Roach can only rebut this

21  strong presumption with "the clearest and most satisfactory evidence." *In re Witt's Est.*, 245 P. 197,

22  202 (Cal. 1926); *accord Priester v. Citizens Nat'l Tr. & Sav. Bank of Los Angeles*, 131 Cal. App. 2d

23  314, 317 (1955) (noting "the presumption can be overcome by clear, convincing and satisfactory

24  evidence"). That principle applies under the current statute as well: Roach must "make it manifest"

25  that he has overcome the presumption in section 16004. *BGJ*, 7 Cal. Rptr. 3d at 149 (quotation

26  omitted).

27        Even if Roach shows that the alleged agreement was fair and just, he cannot rebut the

28  presumption unless he also shows that Fred was "fully advised." *Fair*, 125 Cal. Rptr. 3d at 780. Roach

can carry his burden only by showing that he gave Fred "all that reasonable advice against himself that he would have given him against a third person." *Id.* (quotation omitted). That the alleged agreement contained "material terms and conditions" that were not "explained to and understood by [Fred] at the time" demonstrates that he did not dispel his undue influence or otherwise meet the demands of section 16004. *Id.*

To the extent Roach asserts that there is a question as to the existence of an attorney-client relationship at the time of the agreement as to trigger the application of Rule 3-300 itself, this Court already held there is no genuine issue of material fact otherwise and the Ninth Circuit agreed. *See Schrader Cellars*, 129 F.4th at 1122 ("[I]f a transaction involving an attorney violates Rule 3-300, there is a rebuttable presumption that the transaction was the product of undue influence by the attorney."); *see also id.* at 1119 ("For years, Roach provided legal services to both Fred and Cellars."), 1123 (declining to disturb this Court's finding that "Roach performed legal work for Fred, Cellars, and RBS" in California). This is not to say that Roach will not attempt to perjure himself again by denying he was Cellars' lawyer, but he cannot credibly do so at this stage.

### G.    Cellars' Affirmative Defenses

#### 1.    *Statute of Limitations*

The Court may also render judgment for Cellars if Roach's claims accrued outside the statute of limitations. Roach had three years to assert any claim resulting from being wrongfully deprived of any ownership interest or assets, or other harm caused by Cellars—or four years at most, depending on the asserted conduct. Cal. Code Civ. Proc., §§ 338(d) (three-year limitation for fraud or mistake), 343 (four-year "catch-all" limitation); Cal. Corp. Code §§ 17704.06(e) (four-year limitation for impermissible LLC distributions), 17707.07(2)(b) (four-year limitation after LLC dissolution). These limitations periods apply to Roach's claim for declaratory relief, which is "is subject to the same statute of limitations as the legal or equitable claim on which it is based." *Bank of New York Mellon v. Citibank, N.A.,* 214 Cal. Rptr. 3d 504, 510 (Cal. Ct. App. 2017); *see also Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993).

"The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry." *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001). "A plaintiff need

not be aware of the specific facts necessary to establish a claim"; it is enough that circumstances existed to alert a reasonable person to investigate. *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001); *see also Norgart v. Upjohn Co.*, 981 P.2d 79, 88–89 (1999); *Estill v. Cnty. of Shasta*, 25 Cal. App. 5th 702, 708 (2018). Roach himself asserts that he was wronged when Cellars "commingled" his funds on receipt of those funds in 2001-03, and when Fred failed to distribute profits to him from the "partnership" or the LLC or "illegally" dissolved the LLC in 2013.

Conceding the accrual falls well outside the limitations period, Roach pleads the discovery rule, requiring him to prove by a preponderance of the evidence that not only did he not know of these facts, but that he could not have discovered the factual basis for his claim earlier through the exercise of reasonable diligence. *See id.*; *McKelvey v. Boeing N. Am., Inc.*, 86 Cal. Rptr. 2d 645, 651 (Ct. App. 1999), *as modified* (July 14, 1999) (in discovery rule context "[t]he burden is on the plaintiff to show diligence"). "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1011 (N.D. Cal. 2015). A party such as Roach "must go find the facts; [he] cannot wait for the facts to find [him]." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988). Reasonable diligence is tested objectively: "it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008); *see also Kramas v. Sec. Gas & Oil, Inc.*, 672 F.2d 766, 770 (9th Cir. 1982); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987). Because Roach characterizes his claims as sounding in fraud, the Court must determine whether, by June 9, 2018, Cellars or Fred had defrauded Roach. Cal Code Civ. P. § 338(d). Alternatively, the Court must determine whether Roach knew or, had he exercised reasonable diligence, would have discovered that Fred had dissolved RBS LLC or improperly misappropriated the assets of that entity. *Platt*, 522 F.3d at 1054. Given the nature of his claimed financial injury, not only should Roach have known otherwise, he *did* know—but admitted he intentionally stayed silent.

### 2.    *Unclean Hands and Estoppel*

The Court may also render judgment for Cellars if a preponderance of the evidence establishes its unclean hands, estoppel, or waiver defenses. The doctrine of unclean hands is a complete defense

to legal and equitable causes of action where the defendant establishes "unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy." *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 56–57 (2007), as modified (Apr. 24, 2007) (citation omitted). The doctrine "demands that a plaintiff act fairly in the matter for which he seeks a remedy;" otherwise, "he will be denied relief, regardless of the merits of his claim." *Id.* A lawyer's violation of the professional responsibility requirements supports a finding of unclean hands as to bar the lawyer's recovery, even on an otherwise valid contract. *Goldstein v. Lees*, 46 Cal. App. 3d 614, 618 (1975). Cellars will present evidence of numerous instances of unconscionable, bad faith, and inequitable conduct by Roach in connection his attempt to obtain an interest adverse to his client and lying in wait for decades before suddenly demanding millions.

The Court may also render judgment for Cellars if it finds, by a preponderance of the evidence, that Roach is estopped—whether equitably, judicially, or by conduct—from attempting to acquire or enforce any ownership or pecuniary interest adverse to his clients. **Judicial estoppel** prevents a party from manipulating the judicial process by taking totally inconsistent positions in different proceedings, and applies when the same party takes two "totally inconsistent" positions in a judicial proceeding, "the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true)," and "the first position was not taken as a result of ignorance, fraud, or mistake." *Jackson v. Cnty. of Los Angeles*, 60 Cal. App. 4th 171, 184 (1997).[2] Here, Roach explicitly disavowed any interest in Cellars in the Texas litigation in order to keep Cellars out of that case, a position the Texas court accepted, and has expressly disclaimed any commercial use of the Cellars marks in seeking summary judgment on Cellars' trademark infringement claims. *See* Dkt. 132, p. 27 ("Roach's alleged conduct does not approach actual use of Schrader Cellars' mark" and "does not involve the use of Schrader Cellars' marks in commerce."). Having prevailed on both motions based on those disavowals, Roach is now judicially estopped from reversing course to claim ownership. *See Thomas v. Gordon*, 85 Cal. App. 4th 113, 118–20 (2000) (plaintiff judicially estopped from asserting

---

[2] Equitable estoppel may also apply in the context of inconsistent statements in judicial proceedings, and allows a party to prevent his opponent from changing positions if (1) he was an adverse party in the prior proceeding; (2) he detrimentally relied upon his opponent's prior position; and (3) he would now be prejudiced if a court permitted his opponent to change positions." *Id.*

ownership in companies after previously swearing in bankruptcy court that she had no such interest).

For **equitable estoppel** to apply, "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 489 (1970); *see also* Cal. Evid. Code § 623. For years, Roach acted in ways that affirmatively represented Cellars as the sole owner of the assets at issue and never asserted a personal claim. Fred and Cellars reasonably relied on that course of conduct, including in selling the company to Constellation, and all parties would be severely prejudiced if Roach were now permitted to contradict it. Similarly, despite owing Fred and Cellars a fiduciary duty as their attorney, Roach never advised his clients that the oral agreement purported to confer Roach an ownership interest in Cellars and its assets. *See Spray, Gould & Bowers v. Assoc. Int'l Ins. Co.*, 71 Cal. App. 4th 1260, 1268 (1999) ("An estoppel may arise from silence where there is a duty to speak."). Roach's silence about any ownership interest while actively advancing Cellars' exclusive ownership for decades while Cellars and third parties relied on his representations and omissions, estops Roach from asserting ownership now.

### H.    Roach's Declaratory Relief Fails on Its Face

Should Roach somehow survive the above hurdles, a preponderance of the evidence does not support the extraordinary relief he requests via "declaratory judgment." First, estoppel is negated by the Court's prior, undisturbed finding that Roach could not have reasonably relied on oral representations from his non-lawyer client. *See* Dkts. 184, 327. Should the Court reach the elements of equitable estoppel independently, Roach cannot present evidence that Fred or Cellars were apprised of the facts, intended any conduct to be relied upon, or that Roach was ignorant of the "true state of facts," or that Roach relied on any conduct to his injury. *See* Sec. IV.G.2, *supra*.

Nor could Roach establish entitlement to an equitable accounting, which derives from "equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners." *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984). Accordingly, the Court need only reach Roach's claim for equitable accounting if Roach establishes that he is a "co-owner" of any Schrader Cellars assets. *Id.* Even then, Roach would still need to establish that this is one of the "rare

cases" where the accounts are so complicated that only a court of equity can unravel them. *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1130 (9th Cir. 2020). Even if his sole "damages" expert had not been excluded, *see* Dkt. 184, that expert purported to calculate Roach's claimed recovery simply by multiplying Cellars' valuation by various percentages. However, the Ninth Circuit is clear that an award of equitable accounting is reversible error if the requested recovery can be calculated "by performing basic calculations from evidence adduced at the bench trial." *Id.* And while Roach cannot show the requisite "complicated accounting relationship between parties," that nonetheless would not permit an accounting absent some "finding of fraud or breach of a fiduciary relationship." *Union Bank v. Superior Ct.*, 37 Cal. Rptr. 2d 653, 666 (Ct. App. 1995); *see also Jolley v. Chase Home Fin., LLC*, 153 Cal. Rptr. 3d 546, 576–77 (Ct. App. 2013), *as modified on denial of reh'g* (Mar. 7, 2013). For all the reasons stated above, Roach cannot show fraud or that his clients owed him fiduciary duties.

DATED:  August 29, 2025

*/s/ Casey Low*

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

CASEY LOW (Tex. Bar No. 24041363)
*Pro Hac Vice*
casey.low@pillsburylaw.com
SARAH GOETZ (Tex. Bar No. 24109930)
*Pro Hac Vice*
sarah.goetz@pillsburylaw.com
401 W 4th St, Suite 3200
Austin, TX  78701
Telephone:     512.580.9600
Facsimile:      512.375.4901

STACIE O. KINSER (Cal. Bar No. 300529)
stacie.kinser@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone:     415.983.1000
Facsimile:      415.983.1200

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on August 29, 2025, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system.  The ECF system routinely sends a "Notice of Electronic Filing" to all counsel of record who have consented to accept this notice as service of this document by electronic means.  Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.

*/s/ Casey  Low*

Casey Low